**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

**FRANCISCO SOTO,** on behalf of himself and all others similarly situated,

Plaintiff,

**-v.-**

**ANDY & EVAN INDUSTRIES, INC.,**

Defendant.

-------------------------------------------------------------------x

CASE NO.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **FRANCISCO SOTO** ("Plaintiff" or "Mr. Soto"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this action against **ANDY & EVAN INDUSTRIES, INC.** ("Andy & Evan" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to design, construct, maintain, and operate its ecommerce website, www.andyandevan.com, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. **Plaintiff Francisco Soto** is a resident of New York County and is permanently disabled due to **advanced Wet Age-Related Macular Degeneration ("Wet AMD")**, a degenerative retinal disease that has caused **severe and irreversible central vision loss**. His treating retina specialist at NYU Langone Eye Center confirms that Mr. Soto retains only "bare perception of objects at best," with profound impairment in central acuity, contrast sensitivity, and fine-detail recognition. His condition "meets the clinical criteria for legal blindness," and the vision loss he has sustained is permanent. Exhibit A

2. As a legally blind individual, **Mr. Soto relies exclusively on screen-reading software and keyboard navigation** to access digital content independently, such as NVDA. Because he cannot visually interpret website content, he depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader compatible navigation. For Mr. Soto, accessible coding is not optional—it is the only means by which he can access the internet.

3. In early 2026, Mr. Soto sought to independently browse and purchase clothing and apparel gifts for his sister's newborn twins. Andy & Evan is nationally recognized as a premier infant and children's clothing brand, offering a distinctive and comprehensive range of sizes from newborn through children's sizes 7 and beyond, with a signature product line—including its widely acclaimed "Shirtzie" bodysuit-shirt garments and curated gift sets—that is not replicated elsewhere in the marketplace. Mr. Soto specifically sought to purchase an **Infant Shirtzie Bodysuit Set**, a **Baby Layette Coming-Home Outfit Set**, and an **Infant Sherpa Jacket Set**, all of which are featured prominently on Defendant's website as signature infant and newborn gift products. No other comparable online retailer offers the same combination of newborn-to-toddler sizing, premium fabric quality, and the distinctive gift-ready packaging for which Andy & Evan is uniquely known. Mr. Soto chose **www.andyandevan.com** specifically because it is the only source where these particular infant gift sets—in the styles, colorways, and bundled configurations he sought for his sister's newborn twins—are available.

4. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA

applies to the goods, services, and activities offered by public accommodations on the web.

5. The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8. Plaintiff brings this civil action against Andy & Evan Industries, Inc., the operator of **www.andyandevan.com**, for its failure to design, construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually

impaired individuals. Defendant's denial of full and equal access to its Website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA.

9. On **February 9, 2026**, **March 17, 2026**, and **April 22, 2026**, Plaintiff attempted to access Defendant's Website using screen-reader technology to research and purchase the **Infant Shirtzie Bodysuit Set**, the **Baby Layette Coming-Home Outfit Set**, and the **Infant Sherpa Jacket Set**. He attempted to review product descriptions, available size and color options, pricing, and shipping information before completing purchases as gifts for his sister's newborn twins.

10. Despite multiple attempts across these three dates, Plaintiff was unable to independently complete his objectives due to pervasive access barriers. A SortSite accessibility audit conducted on **June 4, 2026**, of Defendant's Website revealed **18 Level A violations across 128 pages**, including: product images lacking any accessible name or alternative text on **55 pages**; links distinguishable only by text color change (rendering them invisible to screen-reader users) on **92 pages**; invalid ARIA roles on **82 pages**; ARIA controls lacking any label on the homepage; empty role=button elements with no accessible name on the homepage; empty heading elements on multiple pages; and iframes without title attributes on three pages. These technical defects manifested in concrete barriers for Plaintiff: product images for infant garments were announced without meaningful alternative text, depriving him of any information about style, color, or size; interactive controls and form elements were unlabeled or invalid, preventing independent navigation; and broken ARIA structures caused NVDA's focus to behave unpredictably, preventing Plaintiff from selecting sizes, adding items to a cart, or completing a purchase. Exhibit B.

11. The accessibility barriers were systemic and not limited to isolated pages. The SortSite

scan confirmed that **236 pages** of Defendant's Website suffer from accessibility problems, and that **21% of pages** have quality issues—worse than average. The site-wide scope of these findings confirms that Defendant's Website is not coded in a manner compatible with screen-reader technology and denies blind users equal access to the goods and services offered.

12. In addition to the accessibility violations, the SortSite Broken Link Report identified **234 pages** with broken links or HTTP errors, including Shopify account links returning HTTP 406 "Not Acceptable" errors and Facebook links returning HTTP 400 "Bad Request" errors across virtually every page of the Website. These server-side failures further compound the access barriers faced by blind users, who depend on a fully functional website architecture to navigate and interact with Defendant's online store.

13. Defendant operates a retail ecommerce platform through which consumers can browse infant and children's clothing, review product-specific information, select sizes and colors, and purchase items directly online. Plaintiff specifically sought out Andy & Evan because of its industry-unique status as one of the only retailers offering a comprehensive newborn-to-toddler line of premium clothing and gift sets—including its signature Shirtzie garments and coordinated layette sets—in a single, curated online store. No other retailer offers the same combination of newborn sizing, distinctive infant gift packaging, and brand recognition for the specific products Plaintiff sought. This is precisely why Mr. Soto chose **www.andyandevan.com** over other online retailers: the unique breadth of Defendant's infant offerings and the quality of its signature gift-ready apparel sets are not replicable elsewhere.

14. Upon information and belief, Defendant had prior notice of its website accessibility failures and, notwithstanding such notice, has failed to meaningfully remediate its Website. Most significantly, Defendant was sued in federal court for the precise category of violations alleged

herein. In *Calcano v. Andy & Evan Industries Inc.*, No. 1:20-cv-09814 (S.D.N.Y. November 19, 2020), a plaintiff with visual disabilities brought a Title III ADA action against Defendant alleging that **www.andyandevan.com** was inaccessible to screen-reader users, including violations arising from lack of alternative text, empty links, redundant links, linked images missing alternative text, same title elements, and broken links. That action was, upon information and belief, resolved by private settlement in which Defendant agreed to remediate the accessibility barriers on its Website. Notwithstanding this prior federal court action and the remediation commitment Defendant is believed to have made in connection therewith, the SortSite audit conducted by Plaintiff's counsel in June 2026 demonstrates, as set forth herein, that **Defendant has done nothing positive to bring its Website into compliance**. The same systemic, WCAG-violating barriers that existed before any prior notice remain fully intact today—indeed, many of the very same violation categories identified in the 2020 litigation (missing alternative text, empty links, unlabeled elements) continue to pervade Defendant's Website in 2026. This pattern of receiving notice, making promises of remediation, and failing to act demonstrates a willful and deliberate disregard of Defendant's obligations under federal, state, and local law.

15. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that **www.andyandevan.com** becomes and remains accessible to blind and visually impaired users. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

## JURISDICTION & VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

17. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

18. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in New York County, accessed Defendant's Website, **www.andyandevan.com**, from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. *See Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); *see also Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

19. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce Website, **www.andyandevan.com**, which allows users to browse inventory, review product information, select size and color options, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. *See Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

20. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the

web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

21. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

22. Plaintiff **Francisco Soto** is, and at all relevant times was, a resident of **New York County, New York**. Mr. Soto is **legally blind** and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.*, and the protections afforded under New York State and New York City law. As confirmed by his treating retina specialist at NYU Langone Eye Center, Mr. Soto suffers from **advanced Wet Age-Related Macular Degeneration**, a permanent degenerative retinal condition that causes severe central vision loss, profound impairment in contrast sensitivity, and drastically reduced visual acuity. His condition meets the clinical criteria for legal blindness and requires the use of **screen-reading software** to access digital content independently.

23. Plaintiff is a proficient user of screen-reader technology, including **NVDA**, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Soto depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

24. For Mr. Soto, accessible online shopping is essential to his independence and to his ability to care for the needs of his family. As a legally blind consumer, he cannot visually browse retail stores or product displays without assistance. He therefore relies heavily on accessible ecommerce websites to research, evaluate, and purchase products—including clothing gifts for his loved ones. Defendant's platform was uniquely positioned to serve his needs given its nationally

recognized status as a premier infant and children's clothing brand, its signature Shirtzie and layette gift sets, and its comprehensive newborn-to-toddler sizing range. When websites lack proper alternative text, labeled controls, or navigable structure, Mr. Soto is unable to obtain the same information available to sighted shoppers and is denied equal access to the digital marketplace.

25. Upon information and belief, **Andy & Evan Industries, Inc.** is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York. Defendant owns, operates, and controls the commercial retail ecommerce Website **www.andyandevan.com** (the "Website"), through which it markets, displays, and sells infant and children's clothing—including its signature Shirtzie bodysuit-shirt garment sets, baby layette and coming-home outfit sets, infant outerwear and jacket sets, toddler and children's apparel, and related accessories and gift sets—to consumers throughout the United States, including residents of New York. Defendant is one of the only retailers in the United States offering a comprehensive, premium-quality infant and children's apparel line, from newborn through children's sizes, with gift-ready bundled sets available exclusively through its website and authorized retailers. Defendant derives substantial revenue from interstate commerce and transacts business within this District by offering its products for direct online purchase and shipment to New York consumers.

## STATEMENT OF FACTS

### Plaintiff's Attempts to Access Defendant's Website

26. On **February 9, 2026**, **March 17, 2026**, and **April 22, 2026**, Plaintiff **Francisco Soto** attempted on three separate occasions to access Defendant's retail ecommerce Website, **www.andyandevan.com**, using the NVDA screen reader on his home computer in New York County. Plaintiff visited the Website for the specific purpose of browsing and purchasing clothing and apparel gifts for his sister's newborn twins, who were recently born.

27. Plaintiff specifically sought to research and purchase three products: (1) the **Infant Shirtzie Bodysuit Set** (Andy & Evan's signature infant garment, available in newborn and infant sizing in multiple colorways including blue, pink, and gender-neutral options, priced at approximately $36–$42), (2) the **Baby Layette Coming-Home Outfit Set** (a curated newborn coming-home gift set, available in gender-specific colorways, priced at approximately $48–$68), and (3) the **Infant Sherpa Jacket Set** (a premium sherpa outerwear gift set available in newborn and infant sizes, priced at approximately $39–$72). All three products are featured on Defendant's Website as signature infant and newborn gift items. Mr. Soto chose these specific products because of their premium fabric quality, their availability in newborn sizing for his sister's recently born twins, and their distinctive gift-ready presentation—qualities that are not replicated by any other comparable online retailer. He chose **www.andyandevan.com** over all other online children's clothing retailers because no other retailer offers the same combination of comprehensive newborn sizing, Andy & Evan's distinctive Shirtzie designs, and gift-bundled infant sets appropriate for the occasion.

28. Plaintiff attempted to review product names, descriptions, available sizes, colorway options, pricing, and shipping information. He also attempted to use the Website's navigation and product controls to identify the specific items he desired and add them to his cart. However, the SortSite accessibility audit of **www.andyandevan.com** identified **18 Level A violations across 128 pages**, including critical defects on the homepage and product pages through which Plaintiff attempted to shop. These technical defects manifested in concrete barriers for Plaintiff:

> Product images for infant garments—including Shirtzie bodysuit sets, layette sets, and infant jacket sets—throughout the Website were rendered without any accessible name or alternative text, in violation of WCAG 2.1 A F65 (Section 508 A F65, 1.1.1), affecting **55 pages**. NVDA ignored these images entirely or read aloud raw filenames, depriving Plaintiff of any information about the garment's

style, color, size, or design—the precise information he needed to evaluate whether each product was appropriate for his sister's twins.

Links throughout the Website were distinguishable from surrounding text only by a text color change, with no underline or other non-color visual indicator, in violation of WCAG 2.1 A F73 (Section 508 A F73, 1.4.1), affecting **92 pages**. Because NVDA and other screen readers rely on structural markup rather than visual color to identify links, these color-only links were indistinguishable from plain text to Plaintiff, preventing him from identifying and activating navigation elements and product links throughout the site.

ARIA controls on the homepage (Line 15025) lacked any accessible label, in violation of WCAG 2.1 A 4.1.2 (Section 508 A 4.1.2). Interactive controls without labels are announced by NVDA as unlabeled, making them meaningless and unusable. Plaintiff encountered these unlabeled controls when attempting to navigate the homepage to locate infant product categories.

An element with role=button on the homepage (Line 34851) was empty and had no accessible name, in violation of WCAG 2.1 A 4.1.2 (Section 508 A 4.1.2). NVDA announced this element only as "button" with no context, leaving Plaintiff unable to determine its function or interact with it meaningfully.

Heading elements throughout multiple pages were empty, in violation of WCAG 2.1 A 1.3.1 (Section 508 A 1.3.1), including on the About Us page, the Privacy Policy page, and a product page. Screen readers announce headings as navigational landmarks; empty headings disrupt the page structure and cause NVDA to announce blank heading regions, disorienting blind users attempting to navigate efficiently.

iframe elements on three pages—including blog/press pages and the wholesale page—lacked title attributes, in violation of WCAG 2.1 A 4.1.2 (Section 508 A 4.1.2). NVDA reads the frame's filename rather than a meaningful description, preventing Plaintiff from understanding the purpose of embedded content.

Because of these barriers, Plaintiff could not reliably navigate Defendant's infant and newborn product pages, could not identify which products were the Infant Shirtzie Bodysuit Set, the Baby Layette Coming-Home Outfit Set, or the Infant Sherpa Jacket Set, and could not add any item to his cart or proceed toward purchase on any of his three attempts.

29. On each of the three dates—**February 9, 2026**, **March 17, 2026**, and **April 22, 2026**—Plaintiff attempted in good faith to identify the three infant gift products he sought, evaluate available sizes and colors, and complete purchases as gifts for his sister's newborn twins. Because the Website lacked accessible coding, Plaintiff was entirely unable to obtain the same information

available to sighted users and could not complete a purchase on any of the three occasions he attempted.

**Background and Reliability of SortSite**

30. SortSite is a professional-grade website accessibility and quality testing tool developed by PowerMapper Software. It is widely used by web developers, accessibility consultants, government agencies, and legal practitioners to audit websites for compliance with WCAG, Section 508, and other internationally recognized accessibility standards. SortSite performs automated multi-page scanning of entire websites, checking for violations at WCAG 2.1 Levels A, AA, and AAA. It is recognized across the accessibility community for its accuracy and breadth of coverage. SortSite's results are routinely relied upon by federal agencies, law firms, and accessibility practitioners as objective, reproducible evidence of a website's compliance posture. Notably, SortSite reports both the specific WCAG success criterion violated and the exact HTML line numbers on which violations occur, providing a level of technical specificity that further enhances the reliability and probative value of its findings.

**Systemic Barriers Confirmed by SortSite**

31. The SortSite accessibility audit of **www.andyandevan.com**, conducted on June 4, 2026, identified **18 Level A violations across 128 pages**, demonstrating that the barriers Plaintiff encountered were not limited to a single page but were systemic throughout Defendant's Website. The following violations were confirmed, each directly impairing Plaintiff's ability to independently access, navigate, and purchase infant products on the Website:

- **Images missing accessible names** (WCAG 2.1 A F65 / Section 508 A F65, 1.1.1) — affecting **55 pages**, including the homepage and dozens of product and blog pages. img elements throughout the Website lack alt attributes. NVDA ignores such images or reads raw filenames aloud, entirely depriving Plaintiff of information about product styles, colors, and designs. This is the most pervasive Level A violation on the Website and directly prevented Plaintiff from identifying the infant clothing items he sought.

- **Links distinguishable only by text color change** (WCAG 2.1 A F73 / Section 508 A F73, 1.4.1) — affecting **92 pages**, the most widespread violation on the Website. Because blind screen-reader users cannot perceive color, links that are identified only through a text color difference (with text-decoration:none applied) are structurally indistinguishable from surrounding plain text. NVDA cannot identify these links, preventing Plaintiff from locating and activating navigation elements and product links throughout the site.

- **Invalid ARIA role values** (ARIA 1.2 5.3) — affecting **82 pages**, including dozens of blog and press pages where role=header is used invalidly (Line 5577 on each affected page). Invalid ARIA roles are ignored by screen readers entirely, causing structural page elements to be invisible to blind users navigating with NVDA.

- **ARIA control with no accessible label** (WCAG 2.1 A 4.1.2 / Section 508 A 4.1.2) — on the homepage (Line 15025). An interactive ARIA control lacks any label, causing NVDA to announce it as an unnamed or unlabeled control. Without a label, the control is entirely meaningless to blind users.

- **ARIA role=button element empty with no accessible name** (WCAG 2.1 A 4.1.2 / Section 508 A 4.1.2) — on the homepage (Line 34851). An empty element with role=button has no accessible name and no content. NVDA announces it only as "button" with no context, rendering it completely useless to blind users.

- **Elements with role=listbox containing no role=option elements** (HTML5 ARIA 1.2, WCAG 2.1 A 1.3.1 / Section 508 A 1.3.1) — on the homepage (Line 15025). The owned roles within the listbox are empty. Screen readers may interpret the listbox unpredictably, disrupting the user's ability to interact with selection controls.

- **Empty heading elements** (WCAG 2.1 A 1.3.1 / Section 508 A 1.3.1) — on three pages: the About Us page (Lines 5647, 5671, 5676), the Privacy Policy page (Line 5542), and a product page (Line 6880). Screen readers announce page headings as navigational landmarks; empty headings disrupt the page hierarchy and generate blank heading announcements that disorient blind users.

- **iframe elements without title attributes** (WCAG 2.1 A 4.1.2 / Section 508 A 4.1.2) — on three pages: a blog/press page (Line 5583), the AE20 subscribe page (Line 5583), and the wholesale page (Line 5597). Screen readers read the frame filename rather than a meaningful description, making embedded content inaccessible.

- **Data table without row and column headers** (WCAG 2.1 A F91 / Section 508 A F91) — on the supported countries page (Line 5545). Screen readers cannot understand column and row relationships in tables without proper th elements, rendering tabular data meaningless.

- **Animated images running over 5 seconds without pause or stop controls** (WCAG 2.1 A F7 / Section 508 A F7) — on three pages, including the homepage and a product page (Lines 30769, 32500, 6008, 6230, 6081, 6588). Animated GIF images on color-changing raincoat product pages play indefinitely without any mechanism to pause or stop them, in violation of the seizure and distraction standards under WCAG.

- **Links using general non-descriptive text such as "Click Here"** (WCAG 2.1 A F63 / Section 508 A F63, 2.4.4, 2.4.9) — on eight pages. Non-descriptive link text prevents

screen-reader users from understanding the link's destination or purpose when navigating by link list, a primary screen-reader navigation strategy.

32. In addition to the Level A violations catalogued above, the SortSite audit identified standards violations on **236 pages** and W3C standards issues on an additional **236 pages**. The overall site quality assessment confirmed that **21% of pages have quality issues—worse than average**—and that **21% have accessibility errors—also worse than average**. The total scope of the audit encompassed **1,141 pages and files**, of which **239 pages** had quality issues and **234 pages** had broken links or HTTP errors. These findings confirm that Defendant's Website is not designed, constructed, maintained, or operated in a manner compatible with screen-reader technology or WCAG 2.1 Level A standards.

33. The SortSite Broken Link Report further identified **234 pages** with broken links returning HTTP error codes, including Shopify account links (https://shopify.com/6749611/account) returning HTTP 406 "Not Acceptable" errors across virtually every page of the Website, and Facebook links (https://www.facebook.com/andyandevankids) returning HTTP 400 "Bad Request" errors across dozens of blog and press pages. These server-side failures are themselves manifestations of Defendant's systemic disregard for website maintenance and accessibility: broken navigation and checkout links directly impede blind users' ability to complete purchases and interact with the site's full functionality.

**<u>Plaintiff's Concrete Injury and Intent to Return</u>**

34. Plaintiff's injuries are concrete, particularized, and ongoing. Plaintiff attempted to access Defendant's Website for the specific purpose of purchasing infant clothing gifts for his sister's newborn twins. His shopping objectives were personal, particular, and tied to specific products he attempted to review.

35. Plaintiff remains highly interested in purchasing the **Infant Shirtzie Bodysuit Set**, the **Baby Layette Coming-Home Outfit Set**, and the **Infant Sherpa Jacket Set** from Defendant and intends to return to the Website as soon as it is made accessible. His intent to return is credible because:

- He continues to desire these specific products—particularly because no other retailer offers the same signature Shirtzie designs, comprehensive newborn sizing, and gift-bundled infant sets as Defendant.
- The specific products he sought—including Andy & Evan's signature Shirtzie garments and layette sets—are not available from any other comparable online retailer in the same styles, quality, or gift-ready configurations.
- He has no alternative means of independently evaluating these products or completing a purchase without an accessible Website.
- He has demonstrated a history of attempting to access the Website on three separate dates for the purpose of making a purchase.

36. Defendant's ongoing operation of an inaccessible Website deters Plaintiff from attempting to use it again until it is remediated. Plaintiff's injury is ongoing because Defendant has no policy or plan to ensure accessibility, and the barriers he encountered remain uncorrected.

37. Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access **www.andyandevan.com** and, as a result of Defendant's failure to design,

construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

39. Plaintiff also seeks certification of a New York subclass consisting of:

All legally blind individuals residing in the State of New York who have attempted to access **www.andyandevan.com** and were denied equal access to the goods, services, and information offered thereon.

40. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its infant and children's clothing products to consumers throughout the United States. Upon information and belief, **thousands of blind and visually impaired individuals** have attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by the SortSite audit.

41. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

42. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screen-reading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite report.

43. Plaintiff will fairly and adequately represent and protect the interests of the Class and

Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

44. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

45. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

46. Plaintiff **Francisco Soto**, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

47. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

48. Defendant's Website, **www.andyandevan.com**, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

49. Defendant has failed to design, construct, maintain, and operate its Website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

50. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

51. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)–(iii).

52. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, **www.andyandevan.com**, has not been provided services that are provided to nondisabled patrons, and has been provided services that are inferior to those provided to nondisabled persons.

53. Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. As set forth in paragraph 14 herein,

Defendant was sued in federal court in 2020 for the same category of ADA website accessibility violations alleged in this Complaint—including missing alternative text, empty links, and unlabeled elements—and, upon information and belief, entered into a private settlement in which it agreed to remediate the accessibility barriers on its Website. Despite this prior proceeding and settlement commitment, **Defendant has failed to implement WCAG-compliant remediation and has done nothing positive to bring its Website into compliance**, as demonstrated by the June 2026 SortSite audit described herein. Defendant's continued operation of an inaccessible website in the face of prior federal litigation and a remediation commitment constitutes a willful and knowing violation of Title III of the ADA.

54. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

55. Plaintiff, **Francisco Soto,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

56. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

57. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

58. Defendants, at all relevant times to this action, own and operate a place of public

accommodation, the subject Website, **www.andyandevan.com**, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

59. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

60. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

61. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

62. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a Website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make the accessibility features of the Website known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full and equal access to the facilities, goods, and services that Defendant makes available to individuals who are not disabled

and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

63. The Defendant's discriminatory practice also includes "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

64. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

65. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

66. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

67. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**<u>THIRD CAUSE OF ACTION</u>**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

68. Plaintiff, **Francisco Soto,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

70. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

71. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

72. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

73. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, **www.andyandevan.com**, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and

discriminates against disabled individuals who are sight impaired.

74. Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

75. Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

76. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id*...

77. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq*.

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

78. Plaintiff, **Francisco Soto,** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

79. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's … disability … directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

80. Defendant is subject to NYCHRL because it owns and operates the Website, **www.andyandevan.com**, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

81. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

82. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities … any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

83. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

84. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

85. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the

full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

86. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

87. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

88. Plaintiff is also entitled to reasonable attorneys' fees and costs.

89. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

90. Plaintiff, Francisco Soto, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

91. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that their Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

92. A judicial declaration is necessary and appropriate at this time so that each of the

parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 *et seq.*;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make **www.andyandevan.com** fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its Website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
June 5, 2026

Respectfully submitted,
*/s/ Robert Schonfeld*
**Robert Schonfeld, Esq.**
Joseph & Norinsberg, LLC
825 Third Avenue
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com
*Attorneys for Plaintiff and the Class*